McRAE, Presiding Justice,
for the Court.
¶ 1. Before she was 6 months old, E.M. was twice adjudicated to be a physically abused child by the Hinds County Youth Court. Her parents or relatives were the custodians and caregivers at the time the injuries occurred. Despite recommendations by the Department of Human Services (DHS), Court Appointed Special Advocate (CASA) and the guardian ad litem (Carter) that it would be in the best interest of E.M. for her to be turned over to the DHS for appropriate placement with a foster family, the trial court judge ruled in favor of relative placement again. In this situation where the mother is HIV positive and the abuse began nine (9) days after the birth of the child and occurred numerous times thereafter, we fail to see why the judge returned the child to relative care. We hereby reverse as the evidence is clear that E.M. should not be placed in a relative environment, and we remand to the youth court which is directed to hold a hearing to determine placement in appropriate foster care.

FACTS

¶ 2. On two separate occasions, the first of which took place when E.M. was 9 days old, she was taken to the doctor. A summary of the findings of various doctors and specialists shows that the baby had bruises and a knot on her stomach (which was later determined to be a liver injury) seven leg fractures and six broken ribs. Dr. Michelle Van Norman and other specialists at the University of Mississippi Medical Center (UMC) performed studies and reviewed E.M.’s records before concluding that neither childbirth, congenital bone disease or the HIV therapy received by E.M.'s mother could have generated the baby’s fractures. Dr. Van Norman and Dr. William McCluskey later testified that E.M.’s injuries were trauma related and typical examples of injuries caused by child abuse. At the time of the injuries, the child’s parents and/or relatives were her custodians and caregivers. After each visit to the hospital, an adjudicatory hearing was held, at which the trial court made a finding of physical abuse. E.M. was placed with her grandmother after the first hearing and in a foster home after the second hearing; both times the parents were allowed supervised visitation.
¶ 3. On December 10, 1999, the youth court entered an ex parte order placing E.M. in the custody of an aunt and uncle and leaving legal custody of the child with the DHS. E.M.’s parents were allowed supervised visitation. Shortly after this, *598 E.M.’s brother, D.M., was born. He was placed with the same aunt and uncle. D.M. was admitted to UMC on January 4, 2000, for serious injuries consistent with Shaken Baby Syndrome. Neither the parents nor the aunt and uncle with custody of the children could explain the occurrence of the injuries. As a result of the harm to her brother, E.M. was placed in foster care. D.M. later died as a result of the injuries he received while in the custody of his aunt and uncle.
¶ 4. On the last day of March 2000, E.M. was hospitalized for liver failure which stemmed from a previous episode of abuse. While E.M. was hospitalized, three custody hearings were held in the Hinds County Youth Court. A DHS social worker, CASA and E.M.’s guardian ad litem testified as to appropriate placement of E.M. Nikki Flippins, of the DHS, explained that the DHS wanted to retain custody of E.M. as she and her brother were in relative custody when they were injured. Amelia Davis, of CASA, testified that after reviewing information from the DHS, UMC, the Jackson Police Department and the District Attorney’s office, as well as conducting their own investigation, CASA recommended therapeutic foster placement for E.M. because of the grave injuries sustained by E.M. and her brother while in relative care. The guardian ad litem, Carter, agreed with the assessments of the DHS and CASA. He reminded the youth court that felony child abuse charges were pending against E.M.’s parents and that past relative custody had not kept E.M. from being abused. Additionally, Carter noted that E.M. had incurred no new injuries during her time in foster care as opposed to relative care.
¶ 5. Over the objections of the Hinds County DHS, CASA and Carter, the youth court held that E.M.’s great-aunt should have physical custody, with the DHS retaining legal custody. Again, the parents were to be permitted supervised visitation.

DISCUSSION

I. WHETHER THE GUARDIAN AD LITEM TIMELY APPEALED THE YOUTH COURT’S ORDER.
¶ 6. Rule 4 of the Mississippi Rules of Appellate Procedure gives interested parties 30 days to file an appeal “after the date of entry of the judgment or order appealed from.” Rule 31 states “[t]he appellant shall serve and file the appellant’s brief within 40 days after the date on which the record is filed.” The youth court’s final order was dated July 11, 2000, and Carter filed a Notice of Appeal and a Designation of the Record on July 13, 2000. However, Carter did not file a brief with the Court until April 20, 2001. This appears to be untimely, but upon further inspection it is shown that the completed record and transcript were not made available to the appellant until February 23, 2001. As the Appellant’s Brief was originally due less than a month after receipt of said record and transcript, Carter properly filed a Motion for Extension of Time for the filing of the Appellant’s Brief. That motion was granted by the Court, causing Appellant’s brief to come due on April 20, 2001. Therefore, this issue is moot.
¶ 7. It should also be noted that the Hinds County Youth Court’s brief was due on June 13, 2001. No brief has been submitted.
*599 II. WHETHER THE YOUTH COURT ERRED IN PLACING E.M. IN THE HOME OF A RELATIVE FOLLOWING TWO ADJUDICATIONS OF PHYSICAL ABUSE.
¶ 8. Miss.Code Ann. § 43-21-603(5) (2000) lists five factors to be considered by the youth court prior to entering a disposition order regarding a child who has been adjudicated neglected or abused:
(a) The child’s physical and mental conditions;
(b) The child’s need of assistance;
(c) The manner in which the parent, guardian or custodian participated in, tolerated or condoned the abuse, neglect or abandonment of the child;
(d) The ability of a child’s parent, guardian or custodian to provide proper supervision and care of a child; and
(e) Relevant testimony and recommendations, where available, from the foster parent of the child, the grandparents of the child, the guardian ad litem of the child, representatives of any private care agency which has cared for the child, the social worker assigned to the case, and any other relevant testimony pertaining to the case.
¶ 9. Testimony and recommendations from the DHS, CASA, Carter, various doctors and E.M.’s family members have given information pertaining to each of the above factors. We do not know what the youth court based its decision on because it did not state any written findings of fact or conclusions of law. The evidence shows that E.M. suffered 6 broken ribs, 7 leg fractures and a permanent liver injury which will require long-term care. Neither her parents nor her relatives admitted knowing the cause of the injuries, although all of the injuries happened while E.M. was in their care. Doctors have described E.M.’s injuries as classic examples of child abuse. The DHS, CASA and Carter have expressed concern over the level of care and apparent lack of supervision during parental visitation that relative custody will provide, and all are in agreement that E.M. should be placed in a therapeutic foster home. It is especially noteworthy that E.M. has suffered no additional injuries during her time in foster care.
¶ 10. The State has an interest in keeping families together. Therefore all practical efforts should be made for the child to stay in his own home. However, if the “effect of the continuation of the child’s residence within his own home would be contrary to the welfare of the child .., and placement of the child in foster care is in the best interests of the child[,]” then the youth court should place the child with another suitable person, the DHS, or a public or private agency. Miss.Code Ann. § 43-21-603(7). Although Miss.Code Ann. § 43-21-609 gives preference in custody matters first to parents, then relatives and lastly to other people or agencies, this Court has held that a relative does not have a preferential right to custody as against unrelated parties because such could foreseeably be against the best interest of the child. Petition of Beggiani, 519 So.2d 1208, 1213 (Miss.1988).
¶ 11. During the first six months of her life, E.M. received 13 broken bones and a blunt force liver injury while in the care of *600 her family. It is not in E.M.’s best interest to award custody to her great-aunt. The youth court ordered that any parental visitation be supervised. All testimony shows that E.M. was in her parents’ custody or in relative custody with parental visitation when her injuries occurred. It defies logic to think that parents or relatives who have severely and permanently injured E.M. and have caused the death of her younger brother could be trusted to properly care for and raise E.M. without further incident. In light of the abuse she received while staying with relatives previously, it would be a grave error to send this defenseless, 21-month-old child to stay with her great-aunt, especially since E.M.’s parents will still be allowed visitation. With consideration of the testimony, evidence and the statutory guidelines, the judgment of the youth court judge should be reversed and E.M. should be placed in appropriate foster care.

CONCLUSION

¶ 12. Although the youth court has some discretion in deciding matters regarding child custody, “the polestar concern is the best interest and welfare of the child.” Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). It is clear from the evidence and testimony in this case that it is definitely not in E.M.’s best interest and welfare to be placed in the custody of her great-aunt or any other family member. The youth court obviously erred in its decision allowing relative placement. Therefore, the judgment of the Hinds County Youth Court is reversed, and this case is remanded to that court which is directed to hold a hearing forthwith in order for E.M. to be placed in appropriate foster care.
¶ 13. REVERSED AND REMANDED.
PITTMAN, C.J., SMITH, P.J., WALLER, DIAZ, EASLEY, CARLSON and GRAVES, JJ., concur.
COBB, J., dissents without separate written opinion.